# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

RODNEY DEWALT,

    Plaintiff,

v.

CITY OF OVERLAND PARK, KANSAS,

    Defendant.

Case No. 18-2690-DDC-TJJ

## MEMORANDUM AND ORDER

    Before the court is a Motion to Dismiss and/or Motion for Judgment on the Pleadings filed by defendant City of Overland Park, Kansas (the "City") (Doc. 10). Plaintiff Rodney DeWalt, who is African-American, alleges that the City detered the success of his entertainment establishment, an establishment he geared toward an African-American clientele. The City contends Mr. DeWalt failed to advance specific allegations supporting the elements of his claims—*i.e.*, his Complaint does not satisfy Federal Rule of Civil Procedure 8's pleading standard. In response, Mr. DeWalt cites the statutes under which he brings his claims and conclusory states that his claims should survive the City's motion. Mr. DeWalt also requests leave to amend his Complaint if the court concludes his Complaint does not satisfy Rule 8. But, Mr. DeWalt has not filed a motion for leave to amend or a proposed amended complaint. The court concludes Mr. DeWalt's Complaint fails to allege facts capable of supporting his claims but allows Mr. DeWalt 10 days to move for leave to amend.

## I. Factual Allegations

The court derives the following factual allegations from Mr. DeWalt's pro se Complaint (Doc. 1). And, the court construes Mr. DeWalt's filings liberally because he proceeds pro se. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").

Mr. DeWalt is an African-American business owner who leased a building at 10635 Floyd Street, Overland Park, Kansas. Doc. 1 at 1–2 (Compl. ¶¶ 1, 12). Mr. DeWalt leased the building to open Gossip, a live-entertainment establishment featuring music and dancing. *Id.* at 1 (Compl. ¶ 2). Mr. DeWalt designed Gossip with an African-American clientele in mind. *Id.* The City initially rejected Mr. DeWalt's proposed use for the building but later granted Mr. DeWalt (1) a building permit to renovate the building; and (2) a special use permit to address the absence of off-street parking controlled by the building for its occupancy capacity. *Id.* at 2–3 (Compl. ¶¶ 15, 18–19). Mr. DeWalt commenced construction in May 2017.

In the months thereafter, Mr. DeWalt received threats from members of the public, telling him that an African-American owned business geared toward an African-American clientele was unwanted in Overland Park, Kansas. *Id.* at 3 (Compl. ¶ 21); *see also id.* at 4 (Compl. ¶ 30) (alleging "hateful and racist calls" continuing into 2018). And, on May 29, 2017, a porta-potty in front of the building was set on fire, causing some damage to the building. *Id.* (Compl. ¶ 22).

Mr. DeWalt completed renovations by the fall of 2017. *Id.* (Compl. ¶¶ 23–25). The building inspector initially refused to issue a certificate of occupancy because two staircases did not comply with code. *Id.* (Compl. ¶ 23). Mr. DeWalt addressed the issue with the staircases, and he received a certificate of occupancy on December 6, 2017. *Id.* (Compl. ¶ 25). But,

Mr. DeWalt contends the building inspector, when issuing the certificate of occupancy, overlooked faulty electrical wiring that was strung together using extension cords. *Id.* (Compl. ¶ 24). And, Mr. DeWalt alleges that the use of extension cords resulted in an electrical fire within a week of the issuance of the certificate of occupancy and, also, caused the lights in Gossip to shut off while patrons occupied the building. *Id.* at 3–5 (Compl. ¶¶ 26, 28, 44).

In January 2018, Mr. DeWalt hired a different electrician who altered and/or replaced several components of the electrical system. *Id.* at 4 (Compl. ¶ 29). In March 2018, Mr. DeWalt sought to renew his special use permit. *Id.* (Compl. ¶ 32). While the City Planning Commission granted the permit, it did so with the condition that Mr. DeWalt employ five security guards during Gossip's business hours and that Gossip's staff undergo "active shooter" training. *Id.* Also, a member of the City Planning Commission questioned whether Mr. DeWalt thought about moving his business to a different location given the "parking situation" at 10635 Floyd Street. *Id.* (Compl. ¶ 33).

In April 2018, Mr. DeWalt received a letter from one of the City's code administrators recommending additional repairs to the electrical system. *Id.* at 5 (Compl. ¶ 40). Sometime later, Mr. DeWalt decided to close Gossip. *Id.* (Compl. ¶¶ 44–45). Mr. DeWalt largely attributes Gossip's closure to the building inspector approving the allegedly faulty electrical system at final inspection and contends the inspector would not have approved the electrical system if Mr. DeWalt was Caucasian and/or Gossip was geared toward a Caucasian clientele. *See id.* (Compl. ¶¶ 43–44).

Mr. DeWalt also contends that a new business, which opened at 10635 Floyd Street, was not required to submit any drawings when conducting renovations or acquire a special use permit for parking. *Id.* (Compl. ¶ 45). Mr. DeWalt attributes these purported differences in treatment to

his race, but he does not identify the race of the new lessee or the specific type of business currently at 10635 Floyd Street. *Id.*

Mr. DeWalt's Complaint presents seven claims for relief. *Id.* at 5–9 (Compl. ¶¶ 46–82). Count One makes a claim under 42 U.S.C. § 1981 for race discrimination, alleging "gross disparity" in the treatment of Caucasian and African-American business owners and the selective enforcement of regulations by the City. *Id.* at 5–6 (Compl. ¶¶ 46–53). And, in his response to the City's motion, Mr. DeWalt elaborates; he asserts that his Count One claim arises under § 1981's protection for the making and enforcement of contracts, identifying his lease for the building at 10635 Floyd Street as the contract impaired by the City's actions. Doc. 14 at 5. Count Two asserts a claim under 42 U.S.C. § 1983 for a procedural due process violation of his Fourteenth Amendment liberty interest to engage in his chosen occupation. Doc. 1 at 6–7 (Compl. ¶¶ 54–58). Count Three makes a § 1983 claim for a Fourteenth Amendment procedural due process violation in the infringement of Mr. DeWalt's property interest in the use of the building at 10635 Floyd Street. *Id.* at 7 (Compl. ¶¶ 59–64). Count Four advances a § 1983 claim for violation of Mr. DeWalt's Fourteenth Amendment right to equal protection of the laws. *Id.* at 7–8 (Compl. ¶¶ 65–70). And, Count Five raises a § 1983 claim for a violation of Mr. DeWalt's First Amendment freedom of association right, alleging that the City's actions prevented him from associating with his African-American clientele and from operating an establishment where African-Americans could congregate for social purposes. *Id.* at 8 (Compl. ¶¶ 71–75). Finally, Counts Six and Seven assert state common law claims—one claiming intentional interference with economic relations and the other asserting an intentional infliction of emotional distress claim. *Id.* at 9 (Compl. ¶¶ 76–82). Mr. DeWalt prays for $6 million in compensatory damages and $6 million in punitive damages. *Id.* at 10.

The City filed an Answer to Mr. DeWalt's Complaint. Doc. 5. The City then moved to dismiss Mr. DeWalt's Complaint or, in the alternative, for judgment on the pleadings. Doc. 10. In support of its motion, the City contends Mr. DeWalt's Complaint fails to advance specific factual allegations supporting every element of each claim. The City also argues that Mr. DeWalt (1) fails to identify the city policy, custom, or practice responsible for the alleged violations; (2) relies on interests not protected by the Constitution when advancing his § 1983 claims; and (3) decided to close Gossip on his own accord. Doc. 11 at 5–17. The City also seeks to recover its attorney fees under 42 U.S.C. § 1988. *Id.* at 17.

Mr. Dewalt's Response to this motion recites the text of the statutes upon which his claims rely and focuses his claims on the building inspector's decision to approve the electrical work despite the use of extension cords. But, Mr. DeWalt's Response largely fails to confront the arguments advanced by the City or identify what allegations in his Complaint allege facts supporting the elements of his claims. Mr. DeWalt does, however, request leave to amend his Complaint if the court determines his Complaint does not satisfy the pleading standard set forth by Federal Rule of Civil Procedure 8.

## II. Standard of Review

A court evaluates a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss.[1] *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). The court will grant a motion for judgment on the pleadings if the factual allegations in the complaint fail to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*,

---

[1] Because the City filed an Answer, the court must treat its motion only as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these [Rule 12(b)] defenses must be made before pleading if a responsive pleading is allowed.").

5

550 U.S. 544, 570 (2007), or if an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss under Rule 12(b)(6), the court must assume that the factual allegations in the complaint are true. *Id.* But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*,

550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)). To satisfy the plausibility requirement, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

**III. Analysis**

    **A. The City's Motion for Judgment on the Pleadings**

        **1. Count One: § 1981 Claim**

"Section 1981 forbids all intentional racial discrimination in the making and enforcement of private or public contracts." *Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265 (10th Cir. 2013) (quoting *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004)). The statute states, in pertinent part:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment
>
> The rights protected by this section are protected against . . . impairment under color of State law.

7

42 U.S.C. § 1981. The basic elements of a § 1981 claim are "(1) the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). And, to advance a claim against a municipality, a plaintiff must also allege "'that the violation of his or her "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and subsequent cases.'" *Randle v. City of Aurora*, 69 F.3d 441, 446 n.6 (10th Cir. 1995) (brackets omitted) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989)).

Mr. DeWalt has pleaded sufficient facts to support the first element of a § 1981 claim. But his allegations supporting the remaining elements of his § 1981 claim are too general and conclusory to satisfy Rule 8(a)'s pleading standard. It is Mr. DeWalt's theory that the City impaired his lease for 10635 Floyd Street when the building inspector *approved* the electrical work and issued him a certificate of occupancy. But, granting a certificate of occupancy permitted Mr. DeWalt to open Gossip and use the building in accord with his lease. And, while electrical issues in the building interfered with his operation of Gossip, Mr. DeWalt does not allege that the City prevented him from hiring a different electrician to install the wiring before the final inspection. Nor does he allege that the City prevented him from hiring an electrician to redo the wiring after the final inspection. To the contrary, Mr. DeWalt alleges that (1) he observed issues with the electrical system before the final inspection; (2) his landlord, not the City, told him to open Gossip or "get out"; and (3) he did hire a different electrician to fix the

alleged defects in the electrical system. Doc. 1 at 3–4 (Compl. ¶¶ 27, 29). Mr. DeWalt has not alleged facts supporting a cognizable claim under § 1981.[2]

## 2. Counts Two Through Five: § 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A municipality is a "person" for purposes of § 1983. *Monell*, 436 U.S. at 700–01. But, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993)). Instead, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–83 (1986). To put it another way, a municipality only can be held liable for acts it "has officially sanctioned or ordered." *Id.* at 480.

"To establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy or custom and the injury alleged." *Bryson*, 627 F.3d at 788 (quoting *Hinton*, 997 F.2d at 782). A municipal policy or custom may take on several forms:

> (1) "a formal regulation or policy statement"; (2) an informal custom "amounting to a widespread practice that, although not authorized by written law or express

---

[2] In reaching this conclusion, the court observes that Mr. DeWalt alleges that the City selectively enforces regulations. Doc. 1 at 6 (Compl. ¶ 48). To the extent this allegation refers to the requirement that Mr. DeWalt hire security guards and have his staff undergo "active shooter" training, Mr. DeWalt arguably has alleged facts suggesting he was treated differently than other business owners. But, Mr. DeWalt does not advance any allegations connecting these requirements to receive a special use permit to his inability to operate Gossip or the impairment of any term in his lease. Instead, the Complaint alleges Gossip closed because of electrical issues and threats Mr. DeWalt received from unidentified members of the public. *Id.* at 5 (Compl. ¶¶ 40–44).

9

> municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."

*Id.* (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)).

Mr. DeWalt's Complaint contains no substantive allegations that, if supported by evidence, would allow a jury to conclude that the City adopted a policy or custom responsible for any constitutional violations alleged in the Complaint. Mr. DeWalt's Complaint does not identify any written or formal City policy targeting African-American business owners. Nor does he allege that the building inspector who performed the final inspection has "final policymaking authority," or that Overland Park's final policymakers ratified the decision of the inspector. Instead, where Mr. DeWalt's Complaint alleges that a code administrator subsequently recommended changes to the electrical system, the Complaint itself defeats any inference that the building inspector was a final policymaker or that the City ratified the building inspector's decision. *See* Doc. 1 at 5 (Compl. ¶ 40) ("Plaintiff received a letter from Jim Brown the acting code administrator for Overland Park, Kansas, He recommended the re-installation of the junction box covers and receptacle covers, in addition to replacing 2 breakers marked spots that looked to have been over heated."). And, at no point does Mr. DeWalt allege a failure to train or supervise employees.

Mr. DeWalt comes closest to satisfying the second form of a policy or custom from *Bryson*—an informal custom. Mr. DeWalt states in the opening paragraph of his Complaint that

"[t]he facts alleged below are not unique."³ *Id.* at 1 (Compl. ¶ 1). This allegation lacks the kind of specificity required by Rule 8(a). And, this conclusory allegation is inconsistent with specific factual allegations advanced by Mr. DeWalt, including his allegation that "Gossip was *the first black owned venue* in Overland Park[.]"⁴ *Id.* at 5 (Compl. ¶ 44) (emphasis added).

Because Mr. DeWalt has failed to plead the existence of a policy or custom through specific factual allegations as required by Federal Rule of Civil Procedure 8, the City's argument for dismissal of his § 1983 claims is well taken.⁵ But, because the court permits Mr. DeWalt the opportunity to move for leave to amend, it pauses briefly to identify some other flaws in his Counts Two through Five claims.

Counts Two and Three raise procedural due process claims, alleging the City deprived Mr. DeWalt of his liberty interest to work in his chosen professions and of his property interest in his business. Doc. 1 at 6–7 (Compl. ¶¶ 54–64). When evaluating a procedural due process claim, the court must engage in "a two-step inquiry" that examines "(1) whether the plaintiff has shown the deprivation of an interest in 'life, liberty, or property' and (2) whether the procedures followed by the government in depriving the plaintiff of that interest comported with 'due process of law.'" *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673 (1977)).

---

³ In support of Count Four of his Complaint, Mr. DeWalt also asserts: "Defendant[']s policy, practice, custom or decision to treat businesses differently based on race or ownership or clientele was the moving force behind Plaintiff being deprived of his Fouteen[th] Amendment rights to equal protection." Doc. 1 at 8 (Compl. ¶ 69). This allegation simply recites the elements of a § 1983 claim against a municipality; but, Mr. DeWalt fails to support those elements with any specific factual allegations. Unfortunately, that is what Rule 8 requires. *Bixler v. Foster*, 596 F.3d at 756 (quoting *Iqbal*).

⁴ If Mr. DeWalt was the first African-American business owner in Overland Park, then one cannot infer that the City adopted a "widespread practice" of discriminating against African-American business owners for there were no other African-American business owners against whom to discriminate.

⁵ Mr. DeWalt's failure to identify a policy or custom in his Complaint is an additional defect in his Count One, § 1981 claim.

Besides its failure to identify a policy or custom, Mr. DeWalt's Count Two claim fails because he does not allege an adequate liberty interest to advance his claim. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' or it may arise from an expectation or interest created by state laws or policies." *Id.* (citation omitted). "The liberty interest that due process protects includes the individual's freedom to earn a living." *Lentsch v. Marshall*, 741 F.2d 301, 303 (10th Cir. 1984). But it would "stretch[] the concept too far to suggest that a person is deprived of 'liberty' when [the state deprives him of] one job but [he] remains as free as before to seek another." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 575 (1972). Here, Mr. DeWalt only alleges that the City deprived him of the opportunity to operate Gossip, but he does not advance any broader allegations that the City deprived him of the opportunity otherwise to work in the entertainment business. And, while Mr. DeWalt's Complaint suggests he suffered reputational harm, it fails to advance any allegations identifying the nature of that harm or that the reputational harm precludes him from undertaking future ventures in the entertainment-establishment business.

Second, even if Mr. DeWalt had alleged an adequate liberty interest, the Complaint lacks allegations adequately connecting the City's approval of the electrical system to Mr. DeWalt's inability to operate Gossip. Instead, Mr. DeWalt alleges that he decided to close Gossip, and it appears from his Complaint that, when Gossip closed, his landlord, not the City, voided Mr. DeWalt's lease for 10635 Floyd Street. *See* Doc. 1 at 5 (Compl. ¶ 45) ("Gossip closed; the landlord stated a business failure had occurred and to get out."). Mr. DeWalt's claim in Count

Three for deprivation of due process relative to his property interest struggles for the same reason as his claims in Counts One and Two; his Complaint does not state a cognizable theory for how the City infringed his property interest and forced Gossip's closure.

Turning to Count Four, Mr. DeWalt asserts that the City violated his Fourteenth Amendment equal protection rights. It appears this claim may stem from one (or more) of three sets of allegations: (1) the city inspector approving the electrical system; (2) the requirement that he hire five security guards and have his staff undergo active shooter training; and (3) the City's failure to require a building plan and permit from the owner of a new business at 10635 Floyd Street. But, all three sets of allegations are insufficient, in their current form, to support an equal protection claim. On the first set of allegations, Mr. DeWalt does not contend that the building inspector performed a more thorough inspection of electrical systems at Caucasian-owned business. And Mr. DeWalt does not even identify any Caucasian-owned business who received more favorable treatment from the city inspector than his business. On the second set of allegations, Mr. DeWalt also fails to identify any Caucasian business owners, operating a similar-type entertainment business, who needed a special use permit for parking and who were not required to hire security or have their staff undergo "active shooter" training. And, on the third set of allegations, Mr. DeWalt identifies neither the race of the new business owner nor the type of new business opened at 10635 Floyd Street after Gossip closed. Without alleging any of these facts, Mr. DeWalt's Complaint lacks the specific allegations capable of supporting the elements of an equal protection claim.

Finally, in Count Five, Mr. DeWalt raises a § 1983 claim alleging that the City infringed his First Amendment freedom of association right because it obstructed his efforts to create a venue where an African-American clientele could gather and socialize. Doc. 1 at 8 (Compl.

¶ 71–75). "The First Amendment does not in terms protect a 'right of association.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 23 (1989). But, the Supreme Court has recognized that the "right of association" flows from other activities protected by the First Amendment, such that the First Amendment protects an individual's "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 24 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984)). And, the Supreme Court has rejected the notion that individuals gathering at a business establishment for entertainment, dancing, and social association falls within one of the categories of protected activity covered by the First Amendment. *Id.* at 25. Absent some suggestion that he and his patrons were engaged in an activity protected by the First Amendment, Mr. DeWalt cannot state a cognizable § 1983 alleging a First Amendment violation.

### 3. Counts Six and Seven: State Law Claims

Mr. DeWalt's Complaint makes two state law claims. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction." "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Mr. DeWalt is yet to plead facts capable of supporting any of his claims over which the court has original jurisdiction. Because of the relative infancy of this litigation, the court is inclined to decline supplemental jurisdiction over Mr. DeWalt's state law claims unless

Mr. DeWalt alleges facts capable of sustaining a claim over which the court has original jurisdiction.

### B. Mr. DeWalt's Request to Amend

In response to the City's motion, Mr. DeWalt asks for leave to amend in the event the court concludes his Complaint fails to state a claim upon which relief may be granted. District of Kansas Local Rule 15.1 governs requests for leave to amend and states, in pertinent part:

> **(a) Requirements of Motion.** A party filing a motion to amend or a motion for leave to file a pleading or other document that may not be filed as a matter of right must:
> (1) set forth a concise statement of the amendment or leave sought;
> (2) *attach the proposed pleading or other document*;
> and
> (3) comply with the other requirements of D. Kan. Rules 7.1 through 7.6

(emphasis added). Mr. DeWalt's request for leave to amend does not comply with Local Rule 15.1(a)(2). But, given his pro se status and that the request appeared in his Response to the City's motion, the court will allow Mr. DeWalt 10 days from the date of this Order to move for leave to amend. The court cautions Mr. DeWalt that any motion for leave to amend is not an opportunity for him to raise arguments in response to the City's Motion to Dismiss and/or Motion for Judgment on the Pleadings.

If he moves for leave to amend, Mr. DeWalt *must* attach—as our local rule requires—a proposed amended complaint to any such motion so that the court can determine whether the amended complaint cures the defects in Mr. DeWalt's pending Complaint. And, in permitting Mr. DeWalt the opportunity for leave to amend, the court concludes it is conceivable that Mr. DeWalt could allege facts allowing him to proceed on some, but not all, of the federal claims raised in his Complaint.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. DeWalt is permitted **10 days** from the date of this Order to move for leave to amend.

**IT IS FURTHER ORDERED BY THE COURT THAT** action is deferred on the City's Motion to Dismiss and/or Motion for Judgment on the Pleadings (Doc. 10) until Mr. DeWalt moves for leave to amend or the 10-day period for a motion for leave to amend elapses.

**IT IS SO ORDERED.**

**Dated this 9th day of July, 2019, at Kansas City, Kansas.**

                                                 **s/ Daniel D. Crabtree**
                                                 **Daniel D. Crabtree**
                                                 **United States District Judge**